UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LUIS G. FAUSTO, an individual,

                Plaintiff,

     v.

FORD MOTOR COMPANY; GALPIN FORD; and DOES 1 through 10, inclusive,

                Defendants.

Case No.:  2:25-cv-11664-MEMF-BFM

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [DKT. NO. 17]**

Before the Court is a Motion to Remand filed by Plaintiff Luis G. Fausto. Dkt. No. 17. For the reasons stated herein, the Court DENIES the Motion to Remand.

I.    **Background**

    A.  **Factual Background**[1]

Plaintiff Luis G. Fausto is an individual residing in Los Angeles, California. Dkt. No. 1-5 ¶ 1 ("2AC"). Defendant Ford Motor Company ("Ford") is a Delaware Limited Liability Company, and its principal place of business is Michigan. *Id.* ¶ 4.

On March 4, 2023, Fausto entered into a warranty contract with Ford regarding a 2023 Ford F150 ("The Vehicle"). *Id.* ¶ 9. The Vehicle experienced defects and nonconformities to the

---

[1] Except as otherwise indicated, the following factual background is derived from Plaintiff's Complaint. Compl. The Court includes these allegations only as background and makes no finding on whether they are true.

warranties. *Id.* ¶ 21. Fausto had concerns about the Vehicle's transmission and subsequently delivered the Vehicle to Ford for transmission-related repairs on approximately two occasions. *Id.* ¶ 22. Fausto states that prior to his purchase of the Vehicle, Ford was aware that cars equipped with a 10-speed transmission, such as the Vehicle, suffered from one or more transmission defects. *Id.* ¶ 38. Fausto asserts that Ford had knowledge of the transmission defect and actively concealed the existence and nature of these defects at the time of purchase, repair, and thereafter. *Id.* ¶ 39.

### B. Procedural History

In December 2024, Fausto filed suit against Defendants in Los Angeles County Superior Court. Dkt. No. 1-2 at 1. On December 24, 2024, Ford filed a Notice of Removal in the Central District of California. Fausto filed a First amended complaint in April 2025 and a Second amended complaint on November 12, 2025. *Id.* Fausto brings five causes of action: (1) violation of Section 1793.2(d) of the Song-Beverly Act; (2) violation of Section 1793.2(b) of the Song-Beverly Act; (3) violation of Section 1793.2 (A) (3) of the Song-Beverly Act; (4) breach of implied warranty of merchantability in violation Civil Code section 1791.1, 1794 and 1795.5; and (5) fraudulent inducement by concealment. *See* 2AC.

On January 9, 2026, Fausto filed the instant Motion to Remand. Dkt. No. 17 ("Motion"). He also filed a supporting declaration. Dkt. No. 17-3. Ford filed an Opposition to the Motion on January 22, 2026. Dkt. No. 20 ("Opposition"). Fausto did not file a Reply to the Opposition, so Plaintiff has conceded Defendant's arguments. Nonetheless, the court will decide this Motion on the merits.

On December 22, 2025, Ford re-filed a Motion to Dismiss. Dkt. No. 12. On January 29, 2026, the Court continued the hearing on the Motion to Remand and Motion to Dismiss from February 5, 2026, to March 19, 2026. Dkt. No. 21. On March 19, 2026, the Court held a hearing on the Motion to Remand and Motion to Dismiss, and no one appeared for Fausto with respect to the Motion to Remand.

### II. Applicable Law

### A. Federal Court Jurisdiction

"Federal courts are courts of limited jurisdiction," and can only hear cases where there is a valid basis for federal jurisdiction. *Richardson v. United States*, 943 F.2d 1107, 1112 (9th Cir. 1991).

Civil actions may be removed from state court if the federal court has original jurisdiction. *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002). One possible basis for jurisdiction is federal question jurisdiction, where "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Another basis for jurisdiction is diversity jurisdiction. *See* 28 U.S.C. § 1332 ("Section 1332").

Diversity jurisdiction "requires complete diversity of citizenship and an amount in controversy greater than $75,000." *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 849 (9th Cir. 2020**).** The removing defendant bears the burden of establishing, *by a preponderance of the evidence*, that the amount in controversy exceeds the jurisdictional amount. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). While citizenship to a state is not necessarily tied to residence, a "party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020).

When a plaintiff files an action in state court over which federal courts might have jurisdiction, the defendant may remove the action to federal court. *See* 28 U.S.C. § 1446. As specified in § 1446(a), "a Defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold; the notice need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). To meet this standard, "the parties may submit evidence outside the complaint, including affidavits or declarations, or other summary judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1197 (9th Cir. 2015). The defendant seeking removal of an action from state court bears the burden of establishing grounds for federal jurisdiction. *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F. 3d 1102, 1106-07 (9th Cir. 2010). Courts resolve all ambiguities "in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F. 2d 564,

566 (9th Cir. 1992)). A removed case must be remanded "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. §1447(c).

### III.    Discussion

Fausto argues that his case must be remanded to state court because Ford has failed to: (1) offer any evidence of actual damages; (2) account for the statutory mileage offset; or (3) present any evidence in support of its estimate of civil penalties. *See* Motion. For the reasons discussed below, the Court denies the Motion.

### A. Ford Has Shown by a Preponderance of the Evidence that Diversity Jurisdiction Exists.

Fausto argues that the Court should remand this action because Ford has not established diversity jurisdiction. Fausto does not dispute that the parties are diverse; rather, he challenges whether Ford has established that the amount in controversy exceeds $75,000. Because the Complaint does not explicitly state that the total amount Fausto seeks exceeds $75,000, to show that this Court has jurisdiction, Ford must show by a preponderance of the evidence that the amount in controversy in this matter more likely than not exceeds $75,000. *See Guglielmino,* 506 F.3d at 699 ("The uncertainty which is inherent in the Prayer of Relief places this case within the *Sanchez* line of cases, and we therefore apply the preponderance of the evidence burden of proof to the removing defendant.").

Ford asserts that the amount in controversy requirement has been met because: (1) "actual damages" under the Act of $78,589.47—the purchase price of the vehicle, the mileage offset as well as incidental and consequential damages; (2) a civil penalty of two times his actual damages $157,178.95; and (3) attorneys' fees of at least $30,000. Opposition at 8. Fausto contends that Ford has failed to meet its burden because its proffered calculations are merely speculative.

### i.    Actual Damages

Fausto argues that Ford has failed to produce any evidence or specific facts regarding its estimate of the actual damages at play. Motion at 6. Ford contends that it has satisfied its burden by providing a copy of the Sales Contract of the Vehicle, which includes the Vehicle's purchase price, its mileage offset based on the first presentation, and Fausto's stated incidental and consequential

4

damages. Opposition at 8. The Court finds that Ford's calculations—made under the Song-Beverly damages formula—establish the amount in controversy by a preponderance of the evidence.

Fausto's first argument is that Ford's reliance on his complaint, which states that Fausto incurred "total damages in a sum to be proven at trial in an amount that is not less than 35,001.00"— is insufficient to satisfy the amount in controversy requirement. Motion at 6. But Ford does not rely on the $35,001.00 figure. Rather, Ford's damages calculations rely on the Song-Beverly Act damages formula. Opposition at 8.

Next, Fausto states that Ford's assertion that Fausto's actual damages exceed $64,920 is not supported by any allegations on the face of Fausto's pleadings or in Ford's Notice of Removal. Motion at 8. Fausto asserts that in Ford's Notice of Removal, Ford's calculation of the actual damages in this action relies on the Manufacturer's Suggested Retail Price ("MSRP"), not the purchase price of the vehicle. Motion at 8. Ford states that the actual damages in this action would be at least $72,442.19. Opposition at 9. Ford asserts that this new estimate is based on the purchase price paid for the vehicle as outlined in the Vehicle's Sales contract not the MSRP. *Id.* Ford states that it did not include the Sales Contract in the calculation it provided in its Notice of Removal because it did not possess, and Fausto did not provide Ford with, the Sales Contract during the state-court proceeding. *Id.* at 10.

Finally, Fausto asserts that Ford's calculation of his actual damages is speculative because Ford's estimate fails to account for the Vehicle's statutory mileage-offset[2] in its approximation. Motion at 9-10**.** Fausto states that Ford's failure to address the statutory mileage offset is sufficient, on its own, to invalidate its Notice of Removal and thus its calculations of actual damages is fatally speculative. *Id.* While Ford fails to factor the statutory mileage-offset in its Notice of Removal, Ford includes an estimated statutory mileage offset calculation in its Opposition. Opposition at 9.

---

[2] Per Cal. Civ. Code § 1793.2(d)(2)(C), the mileage offset is calculated by taking the number of miles driven before the first repair attempt divided by 120,000 and multiplying that figure by the vehicle's purchase price. *Id.* The mileage offset is calculated by dividing the number of miles driven before the first repair attempt divided by 120,000 and multiplying the result by the vehicle's purchase price. *Id.* § 1793.2(d)(2)(C).

In its Opposition, Ford thoroughly guides the Court through its actual damages calculation, detailed above. However, Ford also seeks to bolster the argument presented in its Opposition by providing an estimate of economic damages — $78,589. Ford begins its calculation of economic damages with the actual damages figure above—$72,442.19. *Id.* at 2. Next, based on records made available to Ford, Fausto first presented the Vehicle for repair on September 11, 2023. *Id.* at 3. The Vehicle's odometer at this time displayed 6,411 miles. *Id.* Thus, Ford accounts for a statutory mileage offset of $3,852.72[3]. Finally, Ford includes $10,000 in consequential and incidental damages in its calculation, based on Plaintiff's discovery responses. *Id.* at 10. Based on the above calculations, Ford estimates that the total economic damages in this action is at least $78, 589.47.

Restitution under the Song-Beverly Act is calculated by the amount directly attributable to use, calculated by multiplying the actual price of the vehicle paid or payable by "a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer first delivered the vehicle to the manufacturer or distributor." Cal. Civ. Code § 1793.2. The Court finds Ford's calculations made under the Song-Beverly Act damages formula to be reasonable, and not speculative. While Ford did not include the Purchase price of the Vehicle and mileage offset in its Notice of Removal, it includes both factors in its calculation of estimated economic damages detailed above. A preponderance of the evidence means it is more likely than not. *Sanchez,* 102 F.3d at 404. In determining the amount in controversy, the defendant may rely on "a chain of reasoning that includes assumptions." *Arias v. Residence Inn by Marriott,* 936 F.3d 920, 925 (9th Cir. 2019). But "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra,* 775 F.3d at 1197. Fausto failed to provide a Reply to the claims Ford made in its Opposition to the Motion to Remand. Thus, the Court treats those arguments as conceded.

---

[3] The mileage offset is calculated by dividing the number of miles driven before the first repair attempt divided by 120,000 and multiplying the result by the vehicle's purchase price. *Id.* § 1793.2(d)(2)(C). Here, Fausto purchased the subject Vehicle with twenty-nine miles on the odometer on March 4, 2023. On September 11, 2023, with 6,411 miles on the odometer, Fausto first presented the Vehicle to a dealership for a warranty repair. Opposition at 9. Fausto's use of the subject Vehicle prior to the discovery of this alleged nonconformity was 6,382 miles. *Id.* Multiplying this mileage (divided by 120,000) by the cash price of the subject Vehicle results in an estimated mileage offset of $3,852.72. *Id.*

Therefore, with reasonable assumptions as to certain values Ford provides, the Court finds that Ford's proffered evidence is sufficient to establish an AIC over $75,000. Thus, the Court finds that Ford has met the jurisdictional threshold under diversity jurisdiction.

### ii.    Civil Penalties

Fausto next contends that civil penalties in this matter are too speculative to include in the amount in controversy calculation. Motion at 11. The Song-Beverly Act permits a plaintiff to obtain a civil penalty of up to two times the amount of actual damages. Cal. Civ. Code § 1794.9(c). Fausto also asserts that assuming the existence of a civil penalty award is insufficient to meet Ford's burden of removal. *Id.* at 12. Fausto argues that, despite making a request for two times actual damages in his prayer for relief, the civil penalties award Ford provides is too speculative, and Ford did not provide any evidence to support it. *Id.* at 11-12. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Specifically, Fausto argues that Ford did not provide any evidence to support its assertion that Fausto will receive the maximum amount of civil penalties, double civil penalties, or, indeed, any penalties at all. Motion at 11-12. Fausto also asserts that Ford is required to establish by a preponderance the willfulness that might support such an award. *Id.* at 12.

In its Opposition, Ford states that Fausto's request for a double civil penalty takes the amount in controversy up to $157,178. Opposition 12-13.  The civil penalty is derived from doubling the amount in economic damages—$78,589.47, as prescribed in the Song-Beverley Act. *Id.* at 12. Ford also asserts that Fausto presents no controlling legal authority, nor evidence to support his argument regarding Ford's alleged willful failure to comply with the Song-Beverly Act. *Id.* at 14. Lastly, Ford requests that the Court grant leave to conduct limited jurisdictional discovery on the amount in controversy, should the court find that Ford has failed to meet its burden.[4] *Id.* at 14-15.

Here, the Court finds it appropriate to consider the calculations Ford presents regarding civil penalties. Fausto does not deny that he is seeking a civil penalty in his Motion and alleges that Ford

---

[4] The Court finds that Ford met its burden under the Song-Beverly Act and does not provide a ruling on this request.

willfully failed to comply with the Song-Beverly Act. *See generally* Motion. Ford provided sufficient evidence of the actual damages in this action, rendering the civil penalties amount non-speculative. *See* §§ 1794 (c), (e); *see also* Opposition at 8. Fausto does not provide evidence to the contrary. *See Arias*, 936 F.3d at 925 ("When a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied."). Given that Fausto does not contend that he does not seek civil penalties, and Ford's non-speculative calculation of actual damages, the Court finds it appropriate to include civil penalties, bringing the estimated damages in this action to $157,178.95. Opposition at 8.

Moreover, the Court will also consider Fausto's allegation that Ford willfully failed to comply with the Song-Beverly Act. The Court finds that where the defendant has shown the actual damages amount by a preponderance of the evidence, and the plaintiff has alleged willful conduct, the defendant has shown civil penalties in an amount twice the actual damages by a preponderance of the evidence. In calculating the potential civil penalties in this action, Ford relies on an actual damages estimation of $78,589.47. As detailed above, the Court finds Ford's argument regarding estimated actual damages in this action to be persuasive. Therefore, the court finds that Ford has adequately justified its estimation of the civil penalties in this action. *See Ghebrendrias v. FCA US LLC*, No. 221CV06492VAPPDX, 2021 WL 5003352, at *2 (C.D. Cal. Oct. 28, 2021) (calculating civil penalty amount where actual damages are non-speculative and plaintiffs allege that defendant's failure to comply with obligations of Song-Beverly Act was willful); *Rahman v. FCA US LLC*, No. 2:21-CV-02584-SB (JCX), 2021 WL 2285102, at *2-*3 (C.D. Cal. June 4, 2021) (considering penalties where plaintiff alleges that defendant willfully and intentionally failed to comply with the Song-Beverly Act).

Many courts, including courts in this district, have held that a court may not simply assume civil penalties, but rather defendants must justify the assumption. *See e.g., D'Amico v. Ford Motor Co.*, No. CV 20-2985-CJC (JCX), 2020 WL 2614610, at *3 (C.D. Cal. May 21, 2020). Courts have also held that a court need not include civil penalties in its jurisdictional analysis "unless the removing defendant makes some showing regarding the possibility of civil damages." *See Savall v.*

*FCA US LLC*, No. 21CV195 JM (KSC), 2021 WL 1661051, at *3 (S.D. Cal. Apr. 28, 2021) (citing cases); *see also Rahman*, 2021 WL 2285102, at *2-*3 (noting defendant "is not required to prove the case against itself," and "Plaintiff here alleges that Defendant willfully and intentionally failed to comply with Song-Beverly. Accordingly, 'the Court will consider civil penalties.'") (quoting *Brooks v. Ford Motor Co.*, No. CV 20-302 DSF (KKX), 2020 WL 2731830, at *2 (C.D. Cal. May 26, 2020)); *Brooks*, 2020 WL 2731830, at *2 ("It would be absurd to suggest a defendant must offer evidence showing it willfully failed to comply with the Song-Beverly Act.").

The Court finds that Ford successfully established actual damages in controversy by a preponderance of the evidence. The Court similarly finds that Ford's estimate of civil penalties in this case is supported by the evidence and is non-speculative. Thus, the Court finds that Ford has shown by a preponderance of the evidence that a civil penalty amount of at least —$157,178.95— twice the minimum number of actual damages—should be included in the amount in controversy.

## IV.    Conclusion

For the reasons stated herein, Fausto's Motion is DENIED.


IT IS SO ORDERED.

Dated: May 22, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

9